IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RYAN HENDERSON,

                      Plaintiff,

  v.                                                    OPINION and ORDER

LT. TRACIE JOKALA (in her individual capacity),
CITY OF MADISON, and WISCONSIN MUNICIPAL        23-cv-121-jdp
MUTUAL INSURANCE COMPANY,

                      Defendants.

---

Plaintiff Ryan Henderson is a former City of Madison police officer who brings procedural due process claims under the Fourteenth Amendment concerning a letter that was placed in his personnel file without his knowledge. This case presents the same issue that this court recently decided in *Kressin v. Jokala*, No. 23-cv-136 (W.D. Wis. Jan. 25, 2024). Like the plaintiff in *Kressin*, Henderson alleges that he voluntarily resigned so he cannot show the formal change in legal status necessary to state a procedural due process claim. The court will grant defendants' motion to dismiss.

BACKGROUND

The court draws the following factual allegations from Henderson's amended complaint, Dkt. 12, the letter that was placed in Henderson's personnel file, Dkt. 20-3, and an agreement between Henderson and the City concerning his resignation, Dkt. 20-1.[1] At this point in the case, the court accepts Henderson's allegations as true.

---

[1] The court can consider these documents without converting the motion to dismiss into a motion for summary judgment because they are referred to in Henderson's complaint and are

In August 2020, Ryan Henderson, an officer with the Madison Police Department, worked as an adjunct firearms instructor assigned to teach recruits. An incident occurred during one of his trainings that prompted an internal investigation by Tracie Jokala, a lieutenant in the Professional Standards and Internal Affairs office. Henderson was interviewed as part of the investigation and denied the allegations against him. In January 2021, Henderson received a letter from Jokala stating that he was tentatively found in violation of MPD Code of Conduct – Truthfulness and MPD Code of Conduct – Courtesy, Respect, and Professional Conduct. The letter set a date for a hearing about the alleged conduct violations at which Henderson would have the opportunity to contest the charges.

Prior to the hearing, Henderson negotiated with the City, the Department, and his union to resolve the dispute. These negotiations culminated in a memorandum of understanding (MOU) between Henderson, the City, the Department, and his union, pursuant to which Henderson would resign and the City Attorney's office would close the investigation without a final determination. The MOU limited what the City and the Department could tell prospective employers but specified that the limitations did "not apply to reference requests for law enforcement positions" and that the provision limiting disclosure to prospective employers did not affect the City's obligations to provide information under any federal, state, or local laws. Dkt. 20-1, at 1. Henderson's understanding was that his status on the Department of Justice database on law enforcement employees and ex-employees would be marked as his having "resigned prior to completion of internal investigation." Dkt. 12, ¶ 20. On January 19, 2021, Henderson submitted his letter of resignation, effective March 27, 2021.

---

central to Henderson's claims. *See Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 543 (7th Cir. 2022). Henderson does not object to considering these documents.

Because Henderson reached the agreement in the MOU, he did not submit a pre-determination response and no pre-determination hearing was held.

After Henderson resigned from the MPD, he applied for a position with the Waukesha County Sheriff's Office. On July 1, 2021, a detective with the Waukesha County Sheriff's Office came to Madison to review Henderson's personnel file. That day, Jokala sent what the parties refer to as a "Brady letter" to the local district attorney's office and placed a copy in Henderson's personnel file. As this court explained in *Kressin*, a Brady letter discloses information that might benefit the defense in a criminal case, which a prosecutor is required to provide under *Brady v. Maryland*, 373 U.S. 83 (1963). Here, the letter stated that Henderson was found in violation truthfulness and professional conduct codes of conduct and that "[b]etween the issuance of a predetermination notice indicating so and his hearing, he resigned from the department." Dkt. 20-3.

Waukesha County Sheriff's Office did not hire Henderson because of the Brady letter in his personnel file. Henderson applied to three other law enforcement agencies, but he was rejected from all of them due to the Brady letter. Henderson alleges that the Brady letter has completely foreclosed his ability to find another job in law enforcement.

ANALYSIS

Henderson contends that defendants violated his right to occupational liberty by placing the Brady letter in his file. The court's analysis in *Kressin* applies equally in this case. As the court explained in *Kressin*, to state a procedural due process claim under the Fourteenth Amendment based on reputational damage, the plaintiff must show both reputational damage and "alteration of legal status" to establish that a government actor deprived him of a

3

constitutionally protected liberty interest. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002); *Paul v. Davis*, 424 U.S. 693, 708–09 (1976). "Defamation alone . . . is not enough to invoke the procedural safeguards of the Fourteenth Amendment," even if the defamation makes it virtually impossible for an individual to find new employment in his chosen field of work. *Hinkle v. White*, 793 F.3d 764, 770 (7th Cir. 2015).

Like the plaintiff in *Kressin*, Henderson's allegations show that he voluntarily resigned while an investigation into his conduct was pending. Because Henderson's amended complaint alleges that he resigned, he has affirmatively pleaded facts that make it impossible for him to show an alteration in legal status. Thus, Henderson has not plausibly alleged a due process violation because he cannot establish that he was deprived of a constitutionally protected liberty interest. *Roake v. Forest Pres. Dist. of Cook Cnty.*, 849 F.3d 342, 348 (7th Cir. 2017).

Henderson raises two issues that were not asserted in *Kressin*. First, Henderson contends that the Seventh Circuit has held that a liberty interest is infringed when the government intentionally imposes a stigma that will make it impossible for an individual to get a government job. To support this contention, Henderson cites *Perry v. FBI*, in which a panel of Seventh Circuit judges held that the FBI deprived the plaintiff of a liberty interest by compiling a report that contained allegations that "effectively foreclose[d] [the plaintiff's] chances of being employed in the law enforcement field." 759 F.2d 1271, 1280 (7th Cir. 1985). But that opinion was not the Seventh Circuit's final decision in *Perry*. In a subsequent en banc decision, the Seventh Circuit held that the plaintiff's due process claim failed for multiple reasons, including that the plaintiff had "not sustained an injury to reputation cognizable under the due process clause" and "did not impose a stigma . . . which foreclosed [the plaintiff's] employment opportunities." *See Perry v. F.B.I.*, 781 F.2d 1294, 1300–02 (7th Cir. 1986) (en

4

banc).² As this court discussed in *Kressin*, recent Seventh Circuit decisions have rejected deprivation of occupational liberty claims in which plaintiffs fail to show an alteration of legal status. *See Hinkle*, 793 F.3d at 771, 768; *Roake*, 849 F.3d at 347–48.

Second, Henderson contends that his departure from the Department "was effectively a discharge, not a resignation." Dkt. 25, at 12. Due process claims related to an involuntary resignation may arise in two circumstances: constructive discharge and coerced resignation. *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). "Constructive discharge occurs when an employer makes employment so unbearable that an employee resigns; coerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges." *Id.* Neither doctrine applies here. Henderson's complaint doesn't contain any allegations that he resigned because the Department made the conditions of his employment so unbearable that he had to resign or that he would have suffered severe consequences if he had not resigned.

Instead, Henderson asserts that his resignation wasn't voluntary because it was based on an intentional misrepresentation by omission. Henderson contends that the Department misled him into resigning, and thereby deprived him of due process, because he was not told that the Department had a practice of sending Brady letters for internal investigations of untruthfulness. Henderson alleges that he would not have agreed to the terms if he had known that the Brady letter saying he violated codes of conduct related to truthfulness would be added to his file. There are two problems with Henderson's involuntary resignation argument. First,

---

² Henderson finds some support for his position in *Doe v. U.S. Civil Service Commission*, 483 F. Supp. 539 (S.D. N.Y. 1980). But that case is nonbinding and inconsistent with Seventh Circuit precedent.

Henderson doesn't provide any authority to support his contention that a resignation induced by misrepresentation is considered an adverse employment action for the purpose of a due process claim.

Second, Henderson doesn't develop any argument about his misrepresentation theory. This lack of argument is understandable because his amended complaint doesn't allege facts to support it. Under Wisconsin law, failure to disclose a material fact can be grounds for an intentional misrepresentation claim if the defendant has a duty to disclose the material fact. *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 13, 699 N.W.2d 205, 211. A duty to disclose arises when, among other elements, a material fact is peculiarly and exclusively within the knowledge of one party, and the other party could not reasonably be expected to discover it. *Id.* at ¶ 20, 699 N.W.2d at 213. Here, the City's obligation to issue Brady letters is not a secret, and the MOU specifies that the limitation on information sharing with prospective employers does not affect any obligations that the City or Department have "to provide information and records under the Wisconsin Public Records law and other applicable federal, state, and local laws, regulations or legal process." Dkt. 21-1. Henderson does not dispute that the City had an obligation to issue a Brady letter in this case; he says the letter contains a false statement because it does not expressly say that the finding about his conduct violation was tentative. Dkt. 25, at 12. But the dispute about the exact language of the letter is irrelevant to whether the City was obligated to affirmatively explain its Brady letter practice when it negotiated the MOU with Henderson and his union. Henderson doesn't allege that the City had any such affirmative disclosure obligation. Nor would such an allegation be plausible because a reasonable party could be expected to discover the Department's practices related to the disclosure obligations referenced in the MOU.

The court concludes that Henderson fails to state a Fourteenth Amendment claim because he cannot show any alteration of his legal status. The court will dismiss Henderson's claim against Jokala. Amendment would be futile because the allegations in Henderson's amended complaint show that he voluntarily resigned, which forecloses any possibility that his constitutional claim could prevail. So, the court will deny Henerson leave to amend. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

The defendants also move to dismiss the claims that the City and Wisconsin Municipal Mutual Insurance Company are liable for Jokala's alleged constitutional violation. Because the court will dismiss the underlying constitutional claim, it will also dismiss these derivative claims.

ORDER

IT IS ORDERED that:

1. Defendants Tracie A. Jokala, City of Madison, and Wisconsin Municipal Mutual Insurance Company's motion to dismiss, Dkt. 18, is GRANTED.

2. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered February 5, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge